**IUNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

FINANCE USA NETWORK.COM, INC.,

      Plaintiff,

v.                                                            Case No:  2:12-cv-94-FtM-38DNF

CENTRAL TRANSPORT
INTERNATIONAL, INC. and
CENTRAL TRANSPORT, LLC,

      Defendants.
_____/

## ORDER[1]

    This matter comes before the Court on the Plaintiff Finance USA Network.Com,
Inc. d/b/a Finance USA Factor's (Finance USA) Motion for Partial Summary Judgment
(Doc. #18) filed on November 7, 2012.   The Defendants, Central Transport
International, Inc. and Central Transport, LLC. filed their Response in Opposition and
Cross Motion for Summary Judgment (Doc. # 25) on December 21, 2012.  The Plaintiff
Finance USA filed its Response in Opposition to the Defendants' Motion for Summary
Judgment (Doc. # 25) on December 21, 2012.   The case was reassigned to the
undersigned District Judge on May 30, 2013.  The Motion is fully briefed and ripe for the
Court's review.

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites.
These hyperlinks are provided only for users' convenience.   Users are cautioned that hyperlinked
documents in CM/ECF are subject to PACER fees.   By allowing hyperlinks to other Web sites, this court
does not endorse, recommend, approve, or guarantee any third parties or the services or products they
provide on their Web sites.   Likewise, the court has no agreements with any of these third parties or their
Web sites.   The court accepts no responsibility for the availability or functionality of any hyperlink.   Thus,
the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion
of the court.

**Facts**

On February 22, 2012, Finance USA filed a one count Complaint (Doc. 1) against Central Transport International, Inc. and Central Transcript, LLC seeking to recover damages under the Carmack Amendment, 49 U.S.C. § 14706 (2012) for damages resulting from the transport of a shipment of Hi-Tech, LLC's LED Art in interstate commerce.

On November 2, 2010, Hi-Tec Art, LLC contracted with Central Transport, LLC whereby Central Transport agreed to provide transportation services in interstate commerce for 210 LED Chess/Checkers, 78 LED USA Maps, and 168 LED Art Pads (herein collectively "LED Art") then owned by HI-Tec Art. (Doc. # 18, Ex. A, p. 11). Central Transport was to transport the LED Art from Naples, Florida to the purchaser, Camelot SI, LLC (Camelot), in Memphis, Tennessee.   The LED Art was shipped pursuant to a Central Transport Bill of Lading. (Doc. # 18, Bill of Lading Ex. B). (Doc. # 18, Ex. C ¶ 18).

On the date the transport began, the LED Art was loaded onto a truck operated by Central Transport. Prior to being loaded on the truck, the LED Art was in an undamaged condition. (Doc. # 18, Ex. C ¶ 19). Hi-Tec Art weighed the LED Art on its own scales before shipping it with Central Transport. HI-Tec Art calculated the weight on the Bill of Lading by adding the known weight of the LED Art to the weight of the pallets used to transport the LED Art by Central Transport. Hi-Tec determined the weight of the shipment to be 2934 pounds. Doc. # 18, Ex. A, pp. 10, 52). Information regarding the weight of the pallets was provided to HI-Tec Art by Central Transport. (Doc. # 18, Ex. C ¶ 15).  The Plaintiff claims that Central Transport weighed the LED Art

before embarkation and determined that the weight of the LED Art was actually 3,259 pounds instead of the 2,934 pounds indicated on the Bill of Lading. (Doc. # 18, Ex. A, pp. 10, 52); however, *Central Transport* denies it weighed the shipment prior to embarkation.  Instead *Central Transport* says it weighed the goods in transit on November 3, 2010.

Central Transport did not deliver the LED Art to Camelot in the condition in which it was loaded onto the Central Transport truck. The LED Art was damaged during transportation in interstate commerce and while under the custody and control of Central Transport, when the truck transporting the LED Art was involved in an accident causing the truck to roll over. (Doc. # 18, Ex. A, 9:12; 11:27); (Doc. # 18, Accident Report Ex. D).  Based on the Incident Report created after the accident occurred, the damage from the accident appears to have been caused by Central Transport LLC's driver "nodding off at the wheel." (Doc. # 18, Ex. D). As a result of the damage to the LED Art, Camelot refused to accept delivery. (Doc. # 18, Ex. C ¶ 20).  Following the refusal of the LED Art by Camelot, M&S Inspection was engaged to perform an inspection and develop a report regarding the condition of the LED Art. The report concluded that the LED Art was "not in original containers" and was "crushed." The report also concluded that numerous containers were missing from the damaged shipment. The shipment had no salvage value and was deemed to be a total loss. (Doc. # 18, Ex, C ¶ 21); (Doc. #18, M&S report, Ex. E).

On November 30, 2010, Hi-Tec Art sent Central Transport a Notice of Claim demanding compensation for the full value of the damaged LED Art in the amount of $20,957.88. (Doc. # 18, Ex. C ¶ 22). (Doc. # 18 Notice of Claim, Ex. F).   Central

Transport rejected HI-Tec Art's claim on May 2, 2011, and instead sent Hi-Tec Art a check in the amount of $66.32.  On February 16, 2012, Hi-Tec Art assigned its claim against Central Transport to Finance USA, the Plaintiff in this action. (Doc. # 18 Assignment, Ex. G).

### Standard of Review

Federal Rule of Civil Procedure 56(a) provides that a party claiming relief, or a party against whom relief is sought, "may move ... for summary judgment on all or part of the claim." Thus, pursuant to Rule 56, a party may move for final summary judgment as to a claim, or partial summary judgment as to a "part of a claim," such as liability. See Underwriters At Lloyds Subscribing to Cover Note MC-1151 v. Fedex Truckload Brokerage, Inc., 2010 WL 2681224 *3 (S.D. Fla. July 7, 2010) (citing Fed. R. Civ. P. 56(d)(2)("noting that summary judgment may be rendered on liability alone, even if there is a genuine issue on the amount of damages.")).

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. Mendez v. Land Investors, Corp., WL 1193071 *1-2 (M.D. Fla. March 22, 2013) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)). A fact is "material" if it may affect the outcome of the suit under governing law. Id.

The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes

demonstrate the absence of a genuine issue of material fact. Mendez, WL 1193071 at *1-2 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); Rice–Lamar v. City of Fort Lauderdale, 232 F.3d 836, 840 (11th Cir.2000). In order to avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir.1999).

In ruling on a motion for summary judgment, the Court is required to consider the evidence in the light most favorable to the nonmoving party. Mendez, WL 1193071 at *1-2 (citing Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 507 (11th Cir.2000); Jaques v. Kendrick, 43 F.3d 628, 630 (11th Cir.1995). The Court does not weigh conflicting evidence or make credibility determinations. Mendez, WL 1193071 at *1-2 (citing Hilburn, 181 F.3d at 1225).  "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Tullius v. Albright, 240 F.3d 1317, 1320 (11th Cir.2001) (citing Clemons v. Dougherty Cnty., 684 F.2d 1365, 1369 (11th Cir.1982)). However, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003). A genuine issue of material fact exists only if there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor. Id.

**Discussion**

The Plaintiff, Finance USA, moves the Court for partial summary judgment as to liability.  Finance USA argues that partial summary judgment as to liability is proper in this instance because the undisputed facts of the case demonstrate that the Defendants are liable for the damages to the shipment of LED Art at issue.  The Defendants argue that Finance USA lacks standing to bring the action and that as such summary judgment should be granted in its favor and the case should be dismissed.  The Defendants further set forth an affirmative defense that argues the shipper High-Tec Art intentionally misrepresented the weight and classification of the LED Art to be shipped and as a result Finance USA is prevented from bringing this action under the Carmack Amendment.

1.   Whether Finance USA has Standing

The Defendant states that Finance USA does not have standing to sue because it did not hold title to the goods at the time they were damaged.   The Defendant argues that title to the goods were transferred to the consignee or to the buyer Camelot because the LED Art was shipped Free On Board (FOB) Naples.  Finance USA argues that it held title to the goods because it was given title to the goods after Hi-Tec Art assigned it  the claim against Central Transport on February 16, 2012.

Under the Universal Commercial Code (UCC), which is followed in Florida, once items are shipped F.O.B. point of origin, as in this case Naples, the title transfers to the receiver of the goods once the goods leave the custody of the shipper.

UCC § 2-319 states in pertinent part:

(1) Unless otherwise agreed the F.O.B. (which means Free On Board) at a named place, even though used only in connection with the stated price, is a delivery term under which
(a) When the term is F.O.B. the place of shipment, the seller must at that place ship the goods in the manner provided in this Article (Section 2-504) and bear the expense and risk of putting them into the possession of the carrier; or
(b) When the term is F.O.B. the place of destination, the seller must at his own expense and risk transport the goods to that place and there tender delivery of them in the manner provided in this Article (Section 2-503).

Here the LED Art was shipped F.O.B. Naples which is the shipment point of the seller Hi-Tec Art.   Thus, the Defendants argue that Hi-Tec Art and by assignment Finance USA lost title and possession of the LED Art to the buyer Camelot. The Defendants position misapplies the purpose of the F.O.B. shipment point of origin.

The Carmack Amendment 49 U.S.C. § 14706, requires that a carrier transporting property to issue a bill of lading to the shipper, and makes the carrier liable to the one entitled to recover under the bill of lading for loss or injury to the property. Great West Casualty Co. v. Flandrich, 605 F. Supp. 2d 955, 964 (S.D. Ohio 2009).   Note that the term F.O.B. is a delivery term that requires the seller to deliver the goods into the possession of the carrier upon the terms specified in the UCC, in contrast a bill of lading is a contract between the shipper and the carrier. Id. The bill of lading in this case is a basic transportation contract between Hi-Tec Art and by assignment Finance USA, and the carrier, Central Transport.   See MSC Mediterranean Shipping Co. SA, Geneva v. Metal Worldwide, Inc., 884 F. Supp. 2d 1269,1273 (S.D. Fla. 2012).

The Defendants rely on the F.O.B. Naples designation to shift the ownership of the goods to the buyer Camelot.  While the Bill of Lading stated that the shipment was

F.O.B. Naples, the bill of lading was not entered into by the buyer Camelot.   It is a fundamental rule of contracts that a contract cannot bind a party who has not accepted the contract. Great West Casualty Co., 605 F. Supp. 2d at 964 (citing Hamilton Foundry & Mach. Co. v. Int'l Molders & Foundry Workers Union of N. Am., 193 F.2d 209, 215 (6th Cir.1952). A buyer is not a party to the bills of lading and is not bound by their terms unless it contracts to be so. Stein Hall & Co., Inc. v. S.S. Concordia Viking, 494 F.2d 287, 291 (2d Cir.1974) (cited by Datas Indus. Ltd. v. OEC Freight (HK), Ltd., 2000 WL 1597843, at *5 (S.D.N.Y. Oct. 25, 2000)); ITT Rayonier, Inc. v. S.E. Mar. Co., 620 F.2d 512, 514 (5th Cir.1980); *see* U.S. v. Waterman S.S. Corp., 471 F.2d 186, 188 (5th Cir.1973) (declining to find government liability when the "government was neither party nor privy to the bill of lading"). A carrier and shipper "cannot contract to bind an unconsenting party." Stein, 494 F.2d at 291.

The Plaintiff relies heavily on Great Western Casualty Co. v. Flandrich.  In Great Western Casualty Co., American Foods retained J & W Transport to pick up a load of meat from American Foods. The load consisted of approximately 16,000 pounds of ground beef. J & W Transport was to deliver the load to The Kroger Company ("Kroger") in Delaware, Ohio and Meijer, Inc. ("Meijer") in Tipp City, Ohio [collectively referred to as "Buyers"].  In picking up the load, Flandrich, J & W Transport's driver of the load, signed bills of lading ("Bills of Lading") attesting that the meat was in "apparent good order." Flandrich testified that he had no reason to believe that the goods were damaged when they were transferred into his possession from American Foods.  The bills of lading stated, "Buyer assumes all risk of loss upon Seller's delivery of the goods to the carrier

at the Shipping Point and Seller shall have no further responsibility for the goods." Great West Casualty Co., 605 F. Supp. 2d at 960.  In addition, the Bills of Lading stated that:

> [i]t is mutually agreed, as to each carrier of all or any of said property over all or any portion of said route to destination, and as to each party at any time interested in all or any of said property, that every service to be performed hereunder shall be subject to the terms and conditions of [this] Uniform Domestic Straight Bill of Lading....

Id.  While in transit, the Defendant's truck was involved in a single vehicle accident and the meat was destroyed.

In the law suit that followed, the defendant carrier argued that as a result of the bill of lading's disclaimer regarding liability that the plaintiff had no interest in the goods at the time of the accident because title had already passed to the purchaser.  The Great West Casualty Court held that the Plaintiff had standing to bring the action because the purpose of the Carmack Amendment is to provide a remedy, " where a shipper whose cargo is lost or damaged by a carrier may recover damages for that loss" regardless of who bears the risk of loss. Id. at 964.

The Defendants argue that Great West Casualty Co., is distinguished from the instant case, because the term F.O.B. was never used on the bill of lading, as in this case, which stated F.O.B. Naples.  However, the terms in the bill of lading in Great West Casualty Co., stated "[b]uyer assumes all risk of loss upon Seller's delivery of the goods to the carrier at the Shipping Point and the Seller shall have no further responsibility for the goods." 605 F. Supp. at 960.  The language employed Great West Casualty Co., has the same meaning as that used by the Defendants F.O.B. Naples designation in this case, only the term F.O.B. is absent.  Even though the terminology F.O.B. is not employed the meaning in the bill of ladings is exactly the same in Great West Casualty

Co., as described in this case.  Thus, while the language is different in the two cases the meaning of the terms is essentially the same and the Defendant's objection on those grounds lacks merit.

Furthermore, while Camelot did see the bill of lading upon delivery of the damaged goods, Camelot rejected the shipment due to the damages and therefore rejected any terms or conditions imposed by the bill of lading.  In APL Co. Pte. Ltd. v. U.K Aerosols Ltd., Inc., 452 F.Supp.2d 939, 944-45 (N.D. Cal. 2006), the carrier tried to assert that a third party (who was not the shipper) was liable to it because the third party was a "merchant" within the meaning of the bill of lading, and the carrier asserted that an unnamed party in a bill of lading can still be bound under the bill's definitions. However, the court held that the ability to bind an unnamed party is still subject to the "acceptance" requirement, and there had been no acceptance. Id.  As noted above Camelot was not a party to the bill of lading and in fact rejected the shipment due to the damages incurred during the accident. See Waterman, 471 F.2d at 189 n. 4. (stating that a party "cannot unilaterally employ definitions to bind another by provisions to which the other has not consented to be bound."). Therefore, Camelot was not a party to the bill of lading between the assigned shipper, Finance USA, and the carrier Central Transport. As such, for purposes of this lawsuit under the Carmack Amendment, the shipper has standing to bring this lawsuit.  See Great West Casualty Co., 605 F. Supp. 2d at 964. (holding that where the Plaintiff was the shipper whose goods were lost and who had possession of the bills of lading then the Plaintiff/shipper not the ultimate buyer has standing to bring a lawsuit for damages).

Although, in this instance, Hi-Tec Art was in possession of the bills of lading,   Hi-Tec Art assigned its claim to sue under the bill of lading to Finance USA.   Consignors, holders of the bill of lading issued by the carrier, and persons beneficially interested in the shipment although not in actual possession of the bill of lading have standing to sue under the Carmack Amendment. Banos v. Eckerd Corp., 997 F. Supp. 756, 762 (E.D. La. 1998).   Thus, as the assignee of Hi-Tec Art's claim, Finance USA has standing to sue in this case and the Defendants' Motion for Summary Judgment moving the Court to dismiss due to the Plaintiff's lack of standing is denied.

<u>Whether Finance USA is Entitled to Partial Summary Judgment on Liability</u>

In order to establish a *prima face* case against Central Transport under the Carmack Amendment, Finance USA must offer proof by a preponderance of evidence that (1) Hi-Tec Art's goods were delivered to the carrier in good condition, (2) Hi-Tec Art's goods arrived in damaged condition, and (3) the damaged condition resulted in the specified amount of damage. Bishop v. Allied Van Lines, Inc., 2009 WL 5066786 *3 (M.D. Fla. December 18, 2009) Fine Foliage of Fla., Inc. v. Bowman Transp., Inc., 901 F.2d 1034, 1037 (11th Cir.1990) (internal citations and quotations omitted). *See also* Missouri Pacific R.R. Co. v. Elmore & Stahl, 377 U.S. 134, 84 S. Ct. 1142, 12 L.Ed.2d 194 (1964) ("[T]he shipper establishes his *prima facie* case when he shows delivery in good condition, arrival in damaged condition, and the amount of damages.")

Part of the Carmack Amendment's purpose is "to relieve shippers of the burden of searching out a particular negligent carrier from among the often numerous carriers handling an interstate shipment of goods." Bishop, 2009 WL 5066786 at *3 (quoting Fine Foliage of Florida, Inc., 901 F.2d at 1037). Therefore, the law makes the carrier

that delivers the property liable to the person entitled to relief under the bill of lading. 49 U.S.C. § 14706(a)(l). The Carmack Amendment also holds the delivering carrier liable for the "actual loss or injury to the property" caused by either the receiving carrier, the delivering carrier, or under certain conditions, another carrier in the chain of shipping. Bishop, 2009 WL 5066786 at *3.

The Defendants argue that there is a genuine issue of material fact as set forth in their affirmative defense. The Defendants' affirmative defense alleges the shipper Hi-Tec Art intentionally misrepresented the weight, classification and value of the goods shipped in order to obtain a lower shipping rate. Finance USA argues that the affirmative defense does not apply to the Motion for Summary Judgment because the Defendants had knowledge of the value, nature of the goods classification, and actual weight of the goods at the time of the shipment.

The Defendants' affirmative defense claims that a shipper who intentionally fails to disclose the high value of his shipment in order to get a lower freight rate is barred by his misconduct from recovery for a loss the carrier did not anticipate. Mass v. Braswell Motor Freight Lines, Inc., 577 F. 2d 665, 667 (9th Cir. 1978). The Defendants argue that the case should be dismissed because the shipper Hi-Tec Art deliberately misrepresented the nature of the shipment, the weight of the shipment and the value of goods involved.

In response to the allegations made in the Defendants' affirmative defense, Finance USA points to the affidavit of Roy Smith (Doc. # 18, Ex. C) as evidence that Hi-Tec Art did not intentionally misclassify the LED Art shipment. Smith states:

> At the time of the incident described in Plaintiff's Complaint, Hi-Tec Art,
> LLC had an agreement with a company called InXpress USA to arrange

for the shipment of LED art/maps/games to their purchasers.  At the inception of this agreement with InXpress, Hi-Tec Art Described the goods that it would be shipping.  Based on this description, InXpress USA thereafter designated an NMFC code to be used when shipping the LED art/maps/games.  InXpress USA also provided Hi-Tec Art, LLC with software that allowed Hi-Tec Art,LLC to partially complete a bill of lading to be executed by the carrier of their goods.  From that point forward, as instructed by InXpress USA Hi-Tec Art, LLC always used the same NMFC code on the bills of lading it partially created using the InXpress USA software.  Neither Hi-Tec Art, LLC nor any of its employees, had any knowledge that the NMFC code was incorrect.

(Doc. # 18, Ex. C, pp1-2).  While the affidavit of Roy Smith is evidence that contradicts the Defendants' affirmative defense, it only refutes the allegation and does not establish that Hi-Tec did not intentionally misrepresent the weight and classification of the LED Art.   At the same time the affirmative defense does not establish that Hi-Tec intentionally misrepresented the weight, nature of the shipment or the value of the goods ship.  The Defendants have the burden of establish the proof for their affirmative defense.  Therefore there exists a genuine issue of material fact that prevents the Court from granting the Plaintiff's Motion for Partial Summary Judgment, namely whether or not  the shipper Hi-Tec Art intentionally misrepresented the weight, and classification of the LED Art.

## Conclusion

Under the Carmack Amendment the Plaintiff has standing as the assignee of the claim from Hi-Tec Art to bring this action against the Defendant carriers.  Therefore, the Defendants Cross Motion for Summary Judgment is due to be denied.  Further because the Defendants have raised a genuine issue of material fact, if proven, would prevent the Plaintiff from pursuing a claim under the Carmack Amendment, Finance USA's Motion for Partial Summary Judgment is also due to be denied.

Accordingly, it is now

**ORDERED:**

1.  The Plaintiff Finance USA Network.Com, Inc. d/b/a Finance USA Factor's Motion for Partial Summary Judgment (Doc. #18) is **DENIED**.

2.  The Defendants, Central Transport International, Inc. and Central Transport, LLC. Cross Motion for Summary Judgment (Doc. # 25) is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida this 8th day of July, 2013.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record